Will the clerk please call the last case of the morning? Will the 19-11-30-17, Anita Jones v. J. v. Steve Cunningham, 4-11-18 This talk about Hollywood Casino brings me back. I happen to represent Hollywood Casino in that case. Oh, really? What a coincidence, huh? May it please the Court and Counsel, my name is George Klauke, and I am representing the Chicago Board of Education in this case. Initially, I would say that one of the main issues initially is jurisdiction of this court and the jurisdiction, obviously, of the circuit court. It is our position that the circuit court allowed this case to proceed without the proper statutory requirements of Section 19F1. The case was filed approximately 32 days after the decision was rendered. Now, the statute doesn't start the appeal period at the time of the decision. It starts it at the time of receipt of the decision. But the only information we have in the record with regard to receipt of the record is a letter from counsel attached to an affidavit from counsel. The affidavit was actually prepared on September 6 of 2017, which is quite far beyond when the appeal was filed. The appeal was filed on April 29, 2016, but the letter said that counsel received the decision on April 15. The decision was issued on March 28. Obviously, if the appeal was filed by April 15, 20 days from the date of the decision, then obviously there's no argument with respect to whether there's jurisdiction or not. But anything after that, there needs to be an establishment of when the decision was received. At that time, back in 2016, the commission was sending the decisions by email. I believe that it is the appellant's duty at that level to establish when they receive the decision. And that a letter from, at that point, was a former counsel stating that the decision was received on a certain date without attaching the email from the court commission is just not enough to comply with Section 19-F. Now, what would that email help us, because the court isn't in practice in terms of the procedures here. What would that email show if it were an attachment to the affidavit of the former attorney? The email would show from the Illinois Workers' Compensation Commission to the party attaching the decision. Yep. With a date. That's the most important thing. With a date. Yes, because that's what I'm saying. What would it show? It would show the date of transmission. The date of transmission. And that's the date of receipt, not the date you open it or anything else. It's like in the U.S. mail. Is there somewhere a rule in the commission that says it's the day after receipt? I mean, the day after transmission of the email. I believe it's the day of receipt. The date of transmission is the date of receipt. Okay. That's what I wanted to clarify. Yes. It's like the postal service if you put a mailbox. When you mail it, that's the date of mailing, not the date that you actually open the letter. No, I wasn't even implying that. I'm just saying that was it a presumption that it's the day after transmission? Well, the appeal period would start, I suppose an argument could be made that it would start the next day you receive it and then day one is the next day moving forward for 20 days. But we don't think that it was complied with. And so if that is the case, we would ask the commission to dismiss the appeal for lack of subject matter jurisdiction. And then the Illinois Workers' Compensation Commission decision would still be in effect and be the final decision of this court. If we move to the merits of the case, obviously the standard is manifest way to the evidence on all of the decisions that the Illinois Workers' Compensation Commission decided. Now that goes to jurisdiction on a procedural basis, right? Correct. That's being handled de novo, I'm assuming, by the court. And the remaining issues are manifest way to the evidence. Well, let's look at the opinion of the circuit court. Is this a final and appealable order? Now we're talking substance here. Right. They did remand the issues back to the commission to make findings consistent with their holding. Well, it's stated the court remands this cause to the commission for determination as to the benefits due to the claimant and for any other further proceedings consistent with this order. Is it possible that when you look at that order and what was reviewed, that that could be substantive findings? Yeah, I think it's ambiguous whether it's an actual remand or not. The reason this case was appealed was to address the jurisdiction issue and then also, obviously, the other issues. Well, this is jurisdictional for our court. I don't believe that the – I mean, we can't – we don't have interlocutory review. I agree, but the main issue with respect to Section 19F1 is whether the appeal was filed timely. And if there's no timely filing – If it was filed timely, then we have to address the question as to whether there's jurisdiction to hear this appeal. So you can't avoid the issue. Yeah. Based on what the court did. Yeah. I mean, you want to knock this out of the box. That's your goal. You don't want to be here. Well, that's correct. I mean, if you practice it. This is called the practice of law. I agree, and I think the workers – So now I'm asking this question. We have to raise it ourselves. Right. The court can address it. What did the circuit court do? Is it a final order? As if it's not. I think it's ambiguous. And, again, the reason that this case was appealed is because we don't think the jurisdiction was proper in the circuit court because of the filing issue. Well, can I ask you about the specific language of the order which we should be looking to? It says the circuit court set aside the commission's finding that the claimant was ineligible for maintenance payments. Whether somebody's eligible for maintenance payments under the law is a question of fact, isn't it? So if he sets it aside and it's remanded, what happens to that issue? Does it have to be addressed? Does it have to be addressed back at the commission? Well, who else would address it? The circuit court can't address it. We can't address it. I agree. The circuit court's – listen, I've been handling cases for well over 30 years. I've never seen a decision like the decision from the circuit court.  I won't, but I – Don't go there. It's – it was – But I mean, use a little logic. If he vacates it and it gets remanded, now I suppose the trial court could have said remanded to revisit the maintenance payments, yes, then it would be clear that it's not final, but what is it being remanded for? Maintenance was never discussed as part of the case. It was temporary total disability, permanent disability. That was something I was going to raise. It says here – the court is setting aside its finding that she was ineligible for maintenance payments. I'm at a loss to determine where in the commission's decision it ever said she was ineligible for maintenance payments. It does not. It doesn't. And in addition to that, if you take a look at the arbitrator's decision, the arbitrator's decision only placed – or states that placed an issue was the question of TTD. Correct. That maintenance was – the box is not checked. So what are we to do when an order that comes out of the circuit court, remanding it because it reversed an issue that wasn't an issue and sends it back for a decision on an issue that wasn't an issue? What are we supposed to do with that? More specifically, there was a reversal of a finding that was never a finding, so therefore, maybe there isn't a jurisdictional problem. The only two things – the thing that would create a jurisdictional difficulty for us would be if it's been remanded, legitimately been remanded, for determination of the amount of maintenance benefits to which the claim is entitled. If that's the case, we have no jurisdiction. It's an interlocutory order. But if the claimant wasn't asking for maintenance, but rather TTD only, and the commission never ruled on maintenance, then what was there for the circuit court to set aside? There was never any issue with respect to maintenance for the arbitration – at the arbitration level or at the commission level. I've read this decision from the commission three times, and I can't find the word maintenance in it. I guess you're going to be hanging in there on the merits, so what about the merits? I guess as an aside, when you run across these things, it would be nice if that's your position, that it would be articulated, especially when you're honing in on statutory jurisdictional procedures to try to get them talking to us. Before this court, we review the commission decision, not the circuit court decision. Well, in this case, we've got to do the circuit court decision. That's a dangerous philosophy, because it impacts on our jurisdiction. So, as Justice Hudson said, you may proceed on the merits, but I think it's a lesson learned in combing the record so that we've just eaten up a lot of your time. Thank you. So in terms of the merits of the case, the reviewing court obviously can't reach an opposite conclusion unless there is sufficient evidence, or unless the commission decision is against the manifest way of the evidence. And the appropriate test is whether there's any evidence that you can point to that supports the commission's decision. There's plenty of evidence in this case to support the commission's decision. First of all, the initial complaints of pain or of problems, we obviously don't dispute the fact that Ms. Alita Jones Richard was pushed down stairs by a third grade student. She immediately went to Meyer Medical and had complaints of left knee and right fourth finger. Those were the only things that she complained of on the date of injury. The next day, she went to her primary care physician, Dr. Gormley, and complained of back pain, ribs, shoulder, and varicose veins. Dr. Gormley, at that time, this is the next day, diagnosed as contusions and varicose veins. Then she goes to Dr. White on June 10th of 97, complains of ankles, knees, elbows, shoulder, neck, back, ribs, and hand pain. Neither of those three doctor visits was there any reference at all to her feet. We know from the record, both Dr. Gormley and Dr. Andriachi, that the feet were problematic well in advance of this event that took place. She had heel spurs diagnosed back in 1995, maybe even 1992. She had orthotics for those heel spurs. Even as close as early 1997, she was asking for a referral for treatment for her feet. That all preexisted the June 4, 1997 accident date. She also had complaints of back and neck pain from an auto accident in early 1997 and in 1996. The Industrial Commission looked at the evidence and looked at Dr. Krieger, Dr. Goldberg, Dr. Kornblatt, as well as the testimony of Dr. Hill and Dr. Andriachi and Dr. White, and filtered that through their analysis and determined that there were no complaints to the right feet. The right feet, the feet, bilateral feet were not injured in this accident. There's no history that Dr. Andriachi, who treated the feet, assumed that there was, that the feet were hit in the accident. There's no history of that until the testimony of the petitioner 17 years later on August 5 of 2014. What's happened is there's a conflation of the actual diagnoses and histories to the medical providers versus what the complaints of Ms. Alita Jones Richards were. The diagnoses don't show that there's a relationship with the right knee or the bilateral feet. Now, the right knee, there were complaints periodically of the right knee and of the feet. There was an MRI of the right knee on September 3 of 1997 that showed degenerative disease, no tears, no laxity at all. Dr. Hill ultimately does surgery on the left knee, which is an accepted injury in the case, thinking that there was a tear in the left knee. When he got in on surgery, there's no tear. There's no ligament laxity. The medial and lateral meniscus are normal. The ACL's intact. So there were very little findings even on surgery of the left knee. It's not until February of 2001 that the right knee undergoes surgery, and that's after Dr. Krieger finds full range of motion, no effusion, negative ACL, PCL, tendons intact in June of 1998. And there was another MRI of the right knee June 30, 1998, which showed some moderate tenderness, minimal swelling, and even the treating doctor stated that that was a normal MRI. Yet surgery is done then several years later by Dr. Hill, and what does he find in the right knee? Chondromalacia and medial plica, which Dr. Kornblatt indicates are normal findings. Both knees had chondromalacia, so it's a bilateral condition of Ms. Aleta Jones Richards. The other thing, the industrial clinician just did not believe Ms. Jones Richards. There was an FCE done in September of 1998 that was invalid. They found that there was not sufficient effort in that exam and many inconsistencies, but they did release her to a light-duty work. Then vocational rehabilitation started, and that's when we have the infamous letter from Dr. Hill of November 30, 1998, where he indicates that there are restrictions that Ms. Jones Richards should have, and the question was whether that's a release to return to work or not. I believe it's pretty clear that it is a release to return to work if he says her restrictions are X, Y, and Z. In fact, we can read the note, but it's clearly a release to return to work at that time. Again, that's when the vocational rehabilitation started, and the vocational reports indicate that there was really no great effort to return back to work at that point. Respondent would argue that all of these various issues with respect to everything except the left knee are not related to this event of falling down the stairs. Not much treatment was done for the elbows, the shoulder, the neck, back ribs. The right hand, there was initial complaints of a finger fracture, but that also occurred prior to the date of accident and was being treated for that as well. Later, even after the surgery of the right knee, there were inconsistent findings noted in the HealthSouth records of August 14, 2001, where they say there are inconsistencies in objective findings and subjective complaints. They noted cogwheeling or give-way responses that they just couldn't explain in those records. And throughout Dr. Hill's records, he says there's a normal gait. Now, in his deposition, he said that, well, I just saw her in the office, not out in the general public. But at least in his records, he noted she had a normal gait. So later, she had surgery in 2004 by Dr. Andriachi for plantar fasciitis. Again, that preexisted. So we believe that all of these things preexisted. And we believe that Dr. Kornblatt has the credentials. His credentials and all of the testimony by Dr. Kornblatt was not objective to me. He's an expert in this case. The Industrial Commission, the Workers' Compensation Commission, excuse me, can weigh that evidence and say Dr. Kornblatt is more persuasive in this particular case. Why? Because we have negative MRIs, don't have complaints right away of the various issues. We have Dr. Krieger. And don't forget Dr. Miller, who was examined her knees at the request of Dr. White or Dr. Gormley, her own treating physician, who said that she doesn't have a problem with her right knee. And that was in June of 2000. Eight months or so before the surgery by Dr. Hill on the right knee. So we believe that all of these things in their totality confirm what the Illinois Workers' Compensation Commission did. And we would ask this court, if you don't dismiss it for lack of jurisdiction, to find that the Illinois Workers' Compensation Commission correctly decided the case and leave that as the final decision for the case. Thank you, counsel. You have time to reply. You may respond, counsel. Thank you very much. Good morning, Your Honors. Mr. Kahlke. My name is Mark Schaffner. I represent the Petitioner Alita Jones-Richard in this appeal. There really are two issues presented in this court. One is jurisdiction, and the second, obviously, is manifest weight of the evidence. Can we ask you a threshold question that's hanging in the air? What do you make of the circuit court's ostensible vacating a finding that was not an actual finding? What do you make of that? I think it has to be read in the context. I mean, it's difficult sometimes to, you know, it's a fairly long and a very detailed decision. But in the conclusion, he makes changes to the decision of the commission, you know, essentially reversing it on a number of different issues, which included TTD, included reduction of benefits. So is there a jurisdictional issue for us? What are you saying? Was it final? Was it a final order that we can review? Right. The problem is I think it could be read. With this demand language, with a vacation of whatever. Well, I guess the problem is you could read it two ways. One is that he made these reversals and is just remanding it to the commission to make a decision consistent with his reversal of those decisions. The other way you could read it is, I guess, that he's remanding it for them to make new decisions with respect to maintenance and those issues. Right. And I think it's really a question of how broadly this Court wants to read that. Well, how are you suggesting that you read it? Well, I mean, I guess the way that I read it is that the judge has made decisions here that I think are final in terms of what he says, in terms of the only issue he says is maintenance, which really is subsumed within his reversal of the TTD issue. So the general rule is, as you understand, if there's a remand for something other than a ministerial mathematical calculation and there's any fact issue, it's not a final order. Correct? Correct. So, is there anything other than a ministerial act to be done here? Because if there is, we don't have jurisdiction. Well, I mean, I think in terms of whether there's anything that the commission and whether it's remanded to the commission for them, there really is the remanding it to them to enter an order consistent with what they're finding for a reverse amount. To do that, I think it requires some additional findings. Now, what about maintenance and voc rehab? Was it ever an issue in this case? It was an issue in this case. Maintenance was an issue? Not maintenance, but voc rehab was. Maintenance was never an issue. Maintenance was not an issue because it was always an issue of TTD because there was an issue as to whether treatment had been rendered sufficient to bring Ms. Jones-Richard to a point of maximum medical improvement. So what is the issue with voc rehab? Well, I suppose the issue with voc rehab really had to do with the scope of voc rehab. I mean, it's a, you know, the respondent has taken the position that, hey, they provide voc rehab, set up a job interview, therefore they're done with voc rehab. And, of course, our view is, you know, in line with what we argued in the brief, that it's not as cutting-edge as that, is that she had further treatments needed, she was not at maximum medical improvement. By doing what they were doing with voc rehab. So what did the commission decide in regard to voc rehab? With respect to voc rehab. Actually, I have to say, I don't think there were any findings. They used voc. What? I don't think they made any awards as to voc rehab. Well, then, are they supposed to eventually make these findings? Well, if it's remanded on the issue of TTD and what additional TTD would be due, then I think, yeah, that would be helpful. Well, what did the remand language say? What did further benefits, but what was vacated? Well, I mean, in the conclusion, and I'm looking at the last page of the judge's decision, you know, they set aside the commission's termination of temporary benefits. They set aside the commission's reduction of benefits. They set aside the reduction of reward for medical benefits. But then it's remanded. But then it's remanded, correct, because they found that she was not yet at maximum medical improvement. Well, then, don't you have facts we should forget about? They're right about the maintenance. If you vacate a non-existent finding that doesn't bear on our jurisdiction, then there's nothing to go back on that issue. But you seem to be telling us there's going to have to be some factual determinations by the commission on these issues. Is there not? I think so. I'm reading what the judge's decision did. Well, then, how do we know? Because otherwise— The order's non-final, though, isn't it? I mean, arguably it's not. I mean, it's in terms of the final benefits being awarded. Oh. Okay. And you addressed that in your brief? I don't think that was addressed in the brief, no. Was this a 19B case, or was it not? No, it was a non-19B case. It was not. Correct. Full trial. Right. And the history is a little confused, but because of the way that it was set, and I don't think I'm going to be on the record in this, that it was forced to be tried, due counsel brought in, limited time was tried on the PACs that we had at that time, which were in a permanency. But the arbitrator found that, in fact, in his finding, that the evidence didn't prove permanence, but rather that she was not yet at MMI, which is consistent with what Judge Donovan did. Okay. And even a side formation, I guess I don't want to leave this part out on the jurisdictional issues, this whole issue of timeliness of the appeal. You know, I feel fairly strongly about this, only in the sense that I believe that Ms. Alita Jones filed this in a timely manner. In the best of records, yeah, we graded the Illinois Workers' Compensation Commission filed its electronic record of transmission, because as the rules of the commission say, that is their official form or documentation of when something is communicated. But having said that, there is evidence in the record showing timeliness. There's an affidavit and a letter that was sent to Ms. Alita Jones contemporaneous with or almost contemporaneous with the issuance of the underlying decision. There's nothing that belies that that says it's inconsistent other than counsel's note that the date of issuance of the decision was earlier, but they provide no additional evidence. Given that the IWCC is a party, even though it's not only a party, that electronic record could easily have been filed by them if there was an issue. Additionally, I would suggest that the respondents waived that issue since, one, they could have contested admission of the affidavit at the circuit court. They could have requested an evidentiary hearing of the circuit court on the issue. They didn't do either. So I think that certainly in terms of timeliness, the Court has jurisdiction. Going to the actual facts of the case, the manifest weight of the evidence, the underlying argument seems to be from a Respondent that the IWCC made decisions and that Judge Donnelly went too far, didn't give proper deference to them. The problem with this argument is that if you take it at its base, it's basically saying that the circuit court and this Court are fully emasculated in being able to review decisions of the IWCC. It's not review, but we are emasculated on ability to re-weigh evidence. Agree. We can't do that. I absolutely agree. As much as we would have decided that contrary to what the commission did or what the circuit court did, if there is valid evidence in the record to support the commission's decision, we have to affirm it. We have no choice. And I agree. That's the standard. The problem is, and that's the problem with the Respondent's reliance on Alexander, is that they rely on Alexander, but Alexander just says, hey, you take the commission's decision and you have to assume that the commission has considered the weaknesses of the case. That's not the case here. Here we have findings of the commission that are at total odds with the record. They make findings, for example, that the right knee was never complained of until 1998, even though the record has recited numerous examples of citations where the right knee was complained about before that, before 1998. Now, for some reason, it appears that the commission found Dr. Kornblatt's opinion to be more persuasive. Is that right? That is correct. And the problem I have with that, I mean, and it's true, the commission could make such a finding, but they can't make it in an inconsistent manner. The reason and the rationale, as I read that decision for their, for finding him more credible, is because they found that the treating doctors didn't have full records in their examination and in their opinions that they expressed. The problem is that when Dr. Kornblatt testified, he also said he didn't have full records. He was missing many of the records from Meijer Record, Meijer Medical. He didn't have the records of the claimant's experts. Kennedy. So you're saying that the same alleged underlying flaws of the claimant's experts could have been used against Kornblatt. Is that what you're saying? Right. I'm just going to say, and I guess the argument here is that if a commission is going to make that kind of a finding, they then have to explain why it's applicable to one doctor and not to the other doctors. It's the failing of the commission to do its full analysis in that respect. I do have to address one issue, though, relating to the foot. This goes to the factual issue. Respondent makes this great deal about how there was prior treatment of the feet. First of all, that was two years before this accident. Two is only one visit. Three, it was only the left foot that was involved at that time, not bilaterally as there is after this accident. There's no evidence that there was any complaints with the feet after she had her injection in 1995, two years before this accident. So I think they're trying to complain and make this sound like there was something much more there than before. And you can even see this in their response brief. In the response brief, they write, Dr. Andriachi's office contacted an Appalachian lawyer and told him that the heel pain predated the accident. That's not what the records show. If you go to what the doctor said, all he says is that he contacted the attorney and indicated that she had heel pain in 1995. Not that the pain was predated back in 1995, but rather that there was a prior history two years prior, and again, only on the left foot. So I think that if you look at the facts, the facts definitely demonstrate both the heel pain-related, the foot pain-related, and then, of course, as we talk on the brief, the right knee. I'm not going to belabor those points. We put them in the brief. There's no need to either recite or replay those issues. Unless there are further questions, I would submit to Mr. Kloppe and rely on the brief. Thank you, counsel. Thank you. Counsel may reply. Just very briefly with respect to prior treatment of the feet. It is not correct that it was years before. Ms. Jones-Richard saw Dr. Gormley, her primary care physician, on February 20, 1997, and she was being treated at that time for neck and cervical radiculopathy. This was a few months before the date of accident. And she asked Dr. Gormley for a referral so she could have her heels and feet looked at because of heel spurs. So there were complaints of that just prior to this, as well as the right fourth finger fracture in April of 97, and additional neck treatment in May of 1997. The point with Dr. Andriachi and the telephone, or the request of Ms. Andriachi is that she asked the doctor to write a letter to her lawyer causally relating her feet to the accident. That's the issue there. And that's why the commission stated there was manipulation going on throughout this treatment because the petitioner would make suggestions and or directions to the physicians to do things to make these other ailments related to this June 4, 1997 event. So again, on behalf of the, and by the way, counsel in his brief indicated that the feet were mentioned in the employee accident report and the employee assault report. There's no mention of feet here. There's mention of a lot of other things, sprains, strains, bruises, damages to knees, but there's no indication of any problems with her feet as it related to the accident, and these were documents that she completed herself. So again, respondent would like the, this court to find that the Illinois Workers' Compensation Commission decision is the final decision in this case. I have a question I asked earlier, and I think of you, in regard to this e-filing and e-receipts and e-service. Is there or is there not a commission regulation governing electronic service? I don't believe there's a regulation. What I was looking to is the Supreme Court rule that talks about transmission. The commission hasn't provided that e-service is deemed complete. I am not aware of a- And that it's for the purpose of- I may stand corrected. I just have here in my research that for the purpose of computing time, it's the next business day following the date of transmission. I'm just not sure. Now that deals with service on the filing system, and I don't know whether that applies to their notice of decision. It's just a question I had. Yeah, counsel points to 50 Illinois admin code. Okay, yeah, that's where it would be, right. Yeah, 9050.50D. Well, it's a new world out there with e-filing, so. It is. Back in the old days, you'd get a piece of mail and it's stamped. Right, yeah. But these days, things are more immediate. And again, I don't think that the proper date was sufficient. The letter from counsel- You don't think that that was proof? I don't think that was- Sufficient proof. Sufficient proof, because number one, it's a hearsay document, but number two, it's just counsel's indication that he received it on this date. In affidavit form. Well, the affidavit just attached the letter. So I don't believe it was properly shown, and again, I don't think that the circuit court nor this court had jurisdiction on that basis. Okay, very good. Well, thank you, counsel, both, for your arguments in this matter. This morning, we'll be taking our advisement of written dispositions that I'll issue. The court will stand and recess subject to call.